**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |  |
|---|---|---|
| TEXAS MEDICAL ASSOCIATION, et al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 6:23-cv-59-JDK |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | § § § § § | |
| Defendants. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff healthcare providers again challenge actions by the Defendant Departments in implementing the No Surprises Act (the "Act"). As explained in prior cases, the Act established an arbitration process for resolving payment disputes between certain out-of-network providers and group health plans and health insurers. *See Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs. (TMA I)*, 587 F. Supp. 3d 528, 533–35 (E.D. Tex. 2022), *appeal dismissed*, 2022 WL 15174345 (5th Cir. Oct. 24, 2022); *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs. (TMA II)*, 2023 WL 1781801, at *1–3 (Feb. 6, 2023), *appeal filed*, No. 23-40217 (5th Cir. filed Apr. 6, 2023). The Act also directed the Departments to issue regulations to govern the arbitration proceedings. *E.g.*, 42 U.S.C. § 300gg-111(c)(2)(A).

In this case, Plaintiffs complain that the Departments dramatically increased the administrative fee for participating in the arbitration process, rendering the

1

process cost prohibitive for providers with small-value claims.  This problem is exacerbated, Plaintiffs argue, by the Departments' rule making it difficult to "batch" related claims for resolution in a single arbitration proceeding.  Plaintiffs contend that the Departments' actions—both increasing the fee and restricting batching—violate the Administrative Procedure Act because they were made without notice and comment and are arbitrary and capricious.

As explained below, the Court concludes that the fee increase and batching rule violate the APA's notice-and-comment requirement and must be set aside.  The Court also concludes that vacatur of these rules is the proper remedy.  Plaintiffs, however, have not shown that a refund of previously paid fees or a deadline extension are proper here.  The Court thus **GRANTS-in-part** Plaintiffs' motion for summary judgment (Docket No. 18) and **DENIES** the Departments' cross-motion for summary judgment (Docket No. 41).

## I.

Congress enacted the No Surprises Act in 2020 to address "surprise medical bills."  Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758–2890 (2020).  Generally, the Act limits the amount an insured patient will pay for emergency services furnished by an out-of-network provider and for certain non-emergency services furnished by an out-of-network provider at an in-network facility.  42 U.S.C. §§ 300gg-111, 300gg-131, 300gg-132.[1]

---

[1]  The Act amended three statutes: the Public Health Service Act ("PHSA") (administered by the Department of Health and Human Services), the Employee Retirement Income Security Act ("ERISA") (administered by the Department of Labor), and the Internal Revenue Code (administered by the Department of the Treasury).  For ease of reference, this Opinion cites to the PHSA.

The Act also addresses the payment of these out-of-network providers by group health plans or health insurers (collectively, "insurers").   In particular, the Act requires insurers to reimburse out-of-network providers at a statutorily calculated "out-of-network rate."  § 300gg-111(a)(1)(C)(iv)(II), (b)(1)(D).  In states with an All-Payer Model Agreement or specified state law, the out-of-network rate is the rate provided by the Model Agreement or state law.  *Id.* § 300gg-111(a)(3)(K).  In states without a Model Agreement or state law, the out-of-network rate is either the amount agreed to by the insurer and the out-of-network provider or an amount determined through an independent dispute resolution ("IDR") process. *Id.*

When an insured receives certain out-of-network medical services, insurers must issue an initial payment or notice of denial of payment to a provider within thirty days after the provider submits a bill for that service.   *Id.* § 300gg-111(a)(1)(C)(iv), (b)(1)(C).   If the provider disagrees with the insurer's determination, the provider may initiate a thirty-day period of open negotiation with the insurer over the claim.  *Id.* § 300gg-111(c)(1)(A).  If the parties cannot resolve the dispute through negotiation, the parties may then proceed to IDR arbitration.  *Id.* § 300gg-111(c)(1)(B).

The IDR process is a "baseball-style" arbitration.   The provider and insurer each submits a proposed payment amount and explanation to the arbitrator.   *Id.* § 300gg-111(c)(5)(B).  The arbitrator must then select one of the two proposed payment amounts "taking into account" several specified factors that were the subject of prior lawsuits.  *Id.* § 300gg-111(c)(5)(A); *see TMA I*, 587 F. Supp. 3d at 540–43;

3

*LifeNet, Inc. v. U.S. Dep't of Health & Human Servs.*, 617 F. Supp. 3d 547, 560–62 (E.D. Tex. 2022); *TMA II*, 2023 WL 1781801, at *11.

The Act also instructs the Secretaries of Health and Human Services, Labor, and the Treasury (collectively, the "Departments") to "establish by regulation" this arbitration—or IDR—process.  § 300gg-111(c)(2)(A).

Two aspects of the IDR process are at issue here:  the administrative fee and the criteria for batching claims.

## A.

The Act requires each party to pay an administrative fee "for participating in the IDR process."  *Id.* § 300gg-111(c)(8)(A).  The Act instructs the Departments to "specif[y]" the "time" and "manner" of payment.  *Id.* § 300gg-111(c)(8)(B).  The Act also charges the Departments with "establish[ing]" the amount of the fee, such that "the total amount of fees paid" in a given year "is estimated to be equal to the amount of expenditures estimated to be made by the [Departments] for such year in carrying out the IDR process."  *Id.*

On September 30, 2021, the Departments issued an interim final rule implementing the IDR process.  Requirements Related to Surprise Billing: Part II, 86 Fed. Reg. 55,980 (Oct. 7, 2021).  Under the September Rule, each party must pay the administrative fee "at the time the certified IDR entity is selected."  45 C.F.R. § 149.510(d)(2)(i).[2]  The September Rule, mirroring the statute, requires that the total

---

[2]  As with the Act, identical interim final rules were published in three separate sections of the Code of Federal Regulations, specifically Title 45 – Public Health, Title 26 – Internal Revenue, and Title 29 – Labor.  For ease of reference, this Opinion cites to Title 45.

fees paid in any year be equal to the projected amount of the Departments' expenditures in carrying out the IDR process.  *Id.* § 149.510(d)(2)(ii).  Finally, the September Rule makes clear that "[t]he administrative fee amount will be established in guidance published annually."  *Id.*

Contemporaneously with the September Rule, the Departments issued "guidance" setting the fee at $50 for calendar year 2022.  CTRS. FOR MEDICARE & MEDICAID SERVS., CALENDAR YEAR 2022 FEE GUIDANCE FOR THE FEDERAL INDEPENDENT DISPUTE RESOLUTION PROCESS UNDER THE NO SURPRISES ACT: CHANGE IN ADMINISTRATIVE FEE (Sept. 30, 2021).  In October 2022, the Departments issued guidance for calendar year 2023, again setting the fee at $50.  CTRS. FOR MEDICARE & MEDICAID SERVS., CALENDAR YEAR 2023 FEE GUIDANCE FOR THE FEDERAL INDEPENDENT DISPUTE RESOLUTION PROCESS UNDER THE NO SURPRISES ACT (Oct. 31, 2022).

In December 2022, however, the Departments dramatically raised the fee for 2023 to $350, citing a surge in the volume of disputes and burgeoning costs associated with conducting dispute eligibility.  CTRS. FOR MEDICARE & MEDICAID SERVS., AMENDMENT TO THE CALENDAR YEAR 2023 FEE GUIDANCE FOR THE FEDERAL INDEPENDENT DISPUTE RESOLUTION PROCESS UNDER THE NO SURPRISES ACT: CHANGE IN ADMINISTRATIVE FEE, at 4 (Dec. 23, 2022) ("Fee Guidance"); *see also* Docket No. 43, Ex. 12 at 619 (administrative record with Fee Guidance).

## B.

The Act also instructs the Departments to create rules for "batching."  Batching permits "multiple qualified IDR dispute items and services . . . to be considered

jointly as part of a single determination" by an IDR entity.  § 300gg-111(c)(3)(A).  In other words, providers may bring several distinct "items and services" for consideration in one IDR arbitration if certain criteria are met.  The Act specifies that items and services may be batched if:

> (i) such items and services to be included in such determination are furnished by the same provider or facility;
>
> (ii) payment for such items and services is required to be made by the same group health plan or health insurance issuer;
>
> (iii) such items and services are related to the treatment of a similar condition; and
>
> (iv) such items and services were furnished during the 30 day period following the date on which the first item or service included with respect to such determination was furnished or an alternative period as determined by the Secretary, for use in limited situations, such as by the consent of the parties or in the case of low-volume items and services, to encourage procedural efficiency and minimize health plan and provider administrative costs.

*Id.* § 300gg-111(c)(3)(A).

The Departments addressed batching in the September Rule.  The Rule permits items and services to be batched—or to be considered jointly in a single IDR— if they satisfy four requirements.  Plaintiffs challenge only one such requirement, which corresponds to the Act's related-items-and-services requirement.  Docket No. 18 at 7; § 300gg-111(c)(3)(A)(iii).  Under the September Rule, items and services qualify for batching if:

> (C) The qualified IDR items and services are the same or similar items and services. The qualified IDR items and services are considered to be the same or similar items or services if each is billed under the same service code, or a comparable code under a different procedural code system, such as Current Procedural Terminology (CPT) codes with modifiers, if applicable, Healthcare Common Procedure Coding System

6

> (HCPCS) with modifiers, if applicable, or Diagnosis-Related Group (DRG) codes with modifiers, if applicable . . . .

§ 149.510(c)(3)(i)(C).[3]  By requiring the same service code, the Departments sought to "promot[e] efficiency" by encouraging the IDR entity to "more efficiently focus on where the value" of the item or service is "consistently materially different from the QPA [median rate for that item or service]."  86 Fed. Reg. at 56,064.

## C.

Plaintiffs are healthcare providers.[4]  They challenge the Fee Guidance and the September Rule on batching.  *First*, Plaintiffs contend that these provisions "were unlawfully issued without notice and comment and therefore must be 'set aside'" under the APA.  Docket No. 18 at 16 (quoting 5 U.S.C. § 706(2)(D)).  *Second*, Plaintiffs contend the rules are arbitrary and capricious because the Departments failed to consider the "adverse effects their decisions would have on providers' ability to access the IDR process."  *Id.* at 22.  Accordingly, Plaintiffs request vacatur of the Fee Guidance and certain provisions of the September Rule, a refund of fees, and an extension of IDR deadlines.  Docket No. 1 at 48.

---

[3]  CPT codes provide "a uniform language to describe a physician's work, which facilitates patient billing for medical and surgical procedures, diagnostic tests, laboratory studies, and other medical services rendered."  *Prompt Med. Sys., L.P. v. Allscriptsmysis Healthcare Sols., Inc.*, 2012 WL 678216, at *1 (E.D. Tex. Feb. 13, 2012).  The other listed codes provide similar functions.  *See* 86 Fed. Reg. at 56,008.

[4]  Plaintiffs are the Texas Medical Association, a trade association representing more than 56,000 Texas physicians and medical students; Dr. Adam Corley, a Tyler, Texas physician; Tyler Regional Hospital, LLC, a hospital in Tyler, Texas; and two trade associations for Texas radiologists.  Docket No. 1 ¶¶ 13–17.  The Texas Medical Association, Dr. Corley, and Tyler Regional Hospital were also plaintiffs in prior cases against the Departments.  *See TMA I*, 587 F. Supp. 3d at 536; *TMA II*, 2023 WL 1781801, at *7 n.6.

Defendants are the Departments responsible for promulgating the September Rule and issuing the Fee Guidance—the Departments of Health and Human Services, Labor, and the Treasury, along with the Office of Personnel Management, Centers for Medicare & Medicaid Services, and the current heads of those agencies in their official capacities.  Docket No. 1 ¶¶ 11–18.  Together, the Departments contend that the challenged provisions of the Fee Guidance and September Rule are exempt from notice and comment, and further, that they are not arbitrary and capricious because the Departments reasonably explained their decision making.  Docket No. 41.

Both sides now move for summary judgment under Federal Rule of Civil Procedure 56.  Docket Nos. 18, 41.  Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  On April 19, 2023, the Court heard oral argument on the cross motions.  Docket No. 46.

Both sides agree that the Court can determine Plaintiffs' APA challenge as a matter of law.

## II.

As an initial matter, the Departments argue that "the doctrines of claim preclusion and claim splitting" bar two Plaintiffs from bringing this lawsuit.  Docket No. 41 at 10–12.  They contend that Plaintiffs TMA and Dr. Adam Corley, who

challenged the September Rule in *TMA I*, 587 F. Supp. 3d at 536, should have brought all their September Rule challenges at that time.  The Court disagrees.

Under the doctrine of claim preclusion, "a final judgment forecloses successive litigation of the very same claim . . . ." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Similarly, the rule against claim splitting "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Ameritox, Ltd. v. Aegis Scis. Corp.*, 2009 WL 305874, at \*4 (N.D. Tex. Feb. 9, 2009) (quoting *Sensormatic Sec. Corp., v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008)).  Claim-splitting focuses on the "district court's comprehensive management of its docket, whereas [claim preclusion] focuses on protecting the finality of judgments." *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 973 (E.D. Tex. 2015) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011)).

The requirements for claim preclusion are:

> First, the parties in the instant action must be the same as or in privity with the parties in the prior action in question.  Second, the court that rendered the prior judgment must have been a court of competent jurisdiction.  Third, the prior action must have terminated with a final judgment on the merits.  Fourth, the same claim or cause of action must be involved in both suits.

*Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994).  The requirements for claim splitting are similar, but the doctrine does not require a final judgment.  *Ameritox, Ltd.*, 2009 WL 305874, at \*5.

Neither doctrine applies here because the Departments cannot satisfy the fourth requirement—that the suits involve the same claim or cause of action.  "Suits involve the same claim (or 'cause of action') when they 'arise from the same

transaction,' or involve a 'common nucleus of operative facts' . . . ."  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020) (citations omitted and cleaned up); *see also Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004); *accord Ameritex, Ltd.*, 2009 WL 305874, at *4 ("In a claim splitting case, the second suit will be barred if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim."). What constitutes a "transaction" or a "series of transactions" "must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit." *Davis*, 383 F.3d at 313 (cleaned up).

In this case, Plaintiffs challenge the Fee Guidance and the portion of the September Rule governing batching.  In the prior case, Plaintiffs challenged the September Rule's unlawful presumption in favor of the "qualifying payment amount," or QPA, in determining the proper payment amount.  *See TMA I*, 587 F. Supp. 3d at 535, 540–48.  Although both cases involve the September Rule, there are "meaningful differences" between the pre-IDR requirements at issue here and the regulation governing the use of the QPA in *TMA I*.  *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2308 (2016), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).  The QPA provisions govern the IDR arbitrator's decision making; whereas, the batching rule and administrative fee at issue here influence how, and at what cost, parties may present their claims to

the arbitrator in the first place. *Id.* (noting that rules that set "different, independent requirements" are distinct).

The Departments, moreover, issued the Fee Guidance more than a year after the September Rule and months after the Court issued its opinion in *TMA I*. The fee's seven-fold increase changed the operative facts surrounding the batching rule because now providers must pay a much higher fee to bring a single claim than they did during the previous litigation. *See* Docket No. 18, Ex. 1 at 3 (affidavit of Houston Radiology Associated explaining how the new fee makes it economically unviable to submit 97% of its claims to IDR); *see Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1089 (5th Cir. 2022) (holding claim preclusion did not bar case where the "operative facts" changed since the previous litigation); *cf. Steen v. Harvey*, 247 F. App'x 511, 514–15 (5th Cir. 2007) (per curiam) (applying claim preclusion where the claims were "based on *identical* facts occurring during the same time period").

"[L]ower courts normally treat challenges to distinct regulatory requirements as 'separate claims,' even when they are part of one overarching '[g]overnment regulatory schem[e].'" *Whole Woman's Health*, 136 S. Ct. at 2308 (quoting 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4408 (2d ed. 2002, Supp. 2015)). Accordingly, the Court concludes that this lawsuit does not involve the same cause of action as in TMA's and Dr. Corley's prior case and that the Departments' claim preclusion and claim splitting argument fails.

11

## III.

Plaintiffs argue the Departments improperly bypassed the APA's notice-and-comment requirement when they issued the Fee Guidance and the September Rule on batching.  Docket No. 18 at 16–22.  The Departments counter that they were exempted or excused from notice and comment, and alternatively, that any error was harmless.  Docket No. 41 at 16–20, 24–26.

The APA requires agencies to publish a "notice of proposed rule making" and "give interested persons an opportunity to participate . . . through submission of written data, views, or arguments."  5 U.S.C. § 553(b), (c).  The purpose of this requirement is to "assure fairness and mature consideration of rules having a substantial impact on those regulated" and for the agency to "disclose its thinking on matters that will affect regulated parties."  *United States v. Johnson*, 632 F.3d 912, 931 (5th Cir. 2011).  Agencies must undergo this "notice-and-comment" procedure when issuing substantive rules, which "have the force of law, meaning that they bind the regulated public."  *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 308 (5th Cir. 2021).

Not all rules, however, must go through notice and comment.  *See* § 553(b)(3)(A).  The list of exempted rules includes "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  *Id.*; *see also Flight Training Int'l, Inc. v. Fed. Aviation Admin.*, 58 F.4th 234, 240 (5th Cir. 2023).  "The APA's notice and comment exemptions must be narrowly construed."  *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (cleaned up).  Further, agencies may skip notice and comment where "good cause" exists.  § 553(b)(3)(B).

12

Unless an agency can show an exception to the APA's notice-and-comment requirement, the regulation is "contrary to law" and must be "set aside." *Id.* § 706(2)(A).

## A.

First, the Fee Guidance. The Departments argue they were excused from notice and comment because the Guidance is an "interpretative," not substantive, rule and because notice and comment would be "impracticable" here. Docket No. 41 at 16–21. The Court disagrees on both grounds and further finds that the error was not harmless.

## 1.

Interpretative, or "interpretive,"[5] rules "are those that merely advise the public of the agency's construction of the statutes and rules which it administers." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1811 (2019). They "explain what an agency thinks a statute or regulation actually says." *Flight Training Int'l, Inc.*, 58 F.4th at 242. Substantive rules, in contrast, have "the force of law, meaning that they bind the regulated [parties]." *Walmart Inc.*, 21 F.4th at 308. They "modify [and] add to" the statute "based on the agency's own authority." *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 95 (D.C. Cir. 1997). Put another way, the difference between an interpretive rule and a substantive rule often "turns on how tightly the agency's interpretation is drawn linguistically from the actual language of the statute." *Id.* at 94.

---

[5] The latter is the more common modern spelling and the one used by the Court throughout this Opinion. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 n.1 (2015).

The Fee Guidance is not interpretive because it does not advise the public of the Departments' construction of the Act or September Rule.  *Id.*  It does not, for example, provide linguistic clarity to imprecise terms or derive the $350 administrative fee from vague statutory text.  *See Cath. Health Initiatives v. Sebelius*, 617 F.3d 490, 494 (D.C. Cir. 2010) ("To fall within the category of interpretive, the rule must 'derive a proposition from an existing document whose meaning compels or logically justifies the proposition.'"); *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 170 (7th Cir. 1996) (holding a rule is interpretive "only if it can be derived from the regulation by a process reasonably described as interpretation").

*Warshauer v. Solis* is illustrative.  577 F.3d 1330 (11th Cir. 2009).  There, the Eleventh Circuit held that an agency's $250 reporting threshold was interpretive because it represented the agency's interpretation of a vague term, "insubstantial value."  *Id.* at 1340–41.  Here, by contrast, there is no vague term.  Rather, both the Act and the September Rule impose an "administrative fee" in an amount to be established by the Departments to cover their projected expenses.  In setting the fee at $350, the Departments did not interpret that term for the public, but imposed a specific fee after applying their cost methodology.

The Fee Guidance, moreover, "binds" would-be participants by requiring them to pay $350 to participate in the IDR process.  Fee Guidance at 6; *Walmart Inc.*, 21 F.4th at 308 ("Substantive rules . . . bind the regulated public."); *see also Texas v. United States*, 809 F.3d at 171 ("An agency pronouncement will be considered binding as a practical matter if it . . . is applied by the agency in a way that indicates it is

binding." (cleaned up)).  And because neither the Act nor the September Rule requires participants to pay a $350 fee, the Fee Guidance provides the legal basis for the Departments to impose the fee and enforce compliance.  That makes the Fee Guidance much more like a substantive, rather than interpretive, rule.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) ("[A]n agency bringing an enforcement action must always rely on a rule that went through notice and comment.").  As the Fifth Circuit explained, a rule that "create[s]," rather than "interprets," law—as the Fee Guidance does here—is substantive and subject to the APA's notice-and-comment requirement.  *Brown Exp.*, *Inc. v. United States*, 607 F.2d 695, 700 (5th Cir. 1979).

The Departments argue the Fee Guidance is interpretive because it is labeled "Guidance."  Docket No. 41 at 26.  But that's not enough.  *Brown Exp.*, 607 F.2d at 700 ("The label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact." (cleaned up)).  The Departments also say the Fee Guidance "simply supplies the specific dollar amount dictated by the statute and regulations."  Docket No. 41 at 17.  But, as noted above, neither the statute nor the September Rule dictates $350.  Rather, they require only that the administrative fee offset the Departments' estimated expenditures in carrying out the IDR process.  *See* § 300gg-111(c)(8)(B); § 149.510(d)(2)(ii).  And the statute leaves to the Departments to determine what expenditures are included.  *See* § 300gg-111(c)(8)(B).  This is similar to the situation in *Five Flags Pipe Line Co. v. United States Department of Transportation*, in which the court held that a "fee schedule" was a substantive rule.  1992 WL 78773, at *4

(D.D.C. Apr. 1, 1992).  In that case, a statute required users of a gas pipeline to pay "user fees," but it directed the agency to set the fee in an amount "sufficient to meet the costs of activities" under the statute.  *Id.* at *1.  The court held that the agency's fee schedule created the obligation to pay the fees in the "precise amount" that the agency calculated, and was thus substantive.  *Id.* at *4.

Finally, the Departments argue that notice and comment was not required because they were simply updating and issuing a new fee following an established methodology.  Docket No. 41 at 18 (citing *City of Idaho Falls v. FERC*, 629 F.3d 222, 227 (D.C. Cir. 2011)).  Not so.  In the September Rule, the Departments identified several costs they planned to include in determining the fee amount.  86 Fed. Reg. at 56,001–02.  But in the Fee Guidance, the Departments acknowledged they included an additional cost not previously mentioned—the cost of pre-eligibility review.  Fee Guidance at 3.  "For [the Departments] to make such a change, APA section 553 required notice-and-comment rulemaking."  *City of Idaho Falls*, 629 F.3d at 231 (holding that an agency's new "rental fees" were a substantive rule because the agency calculated them using a new methodology).

In conclusion, the Court holds that the Fee Guidance is not an interpretive rule, and the Departments were not exempted from the APA's notice-and-comment requirement on that basis.

### 2.

Alternatively, the Departments invoke the good cause exception to notice and comment.  Docket No. 41 at 20–21.

The APA excuses agencies from notice and comment "when the agency for good cause finds . . . that [the] notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."  § 553(b)(B).  The burden of establishing good cause is on the agency.  *Coal. for Workforce Innovation v. Walsh*, 2022 WL 1073346, at *5 (E.D. Tex. Mar. 14, 2022).  The good cause exception "should be read narrowly in order to avoid providing agencies with an escape clause from the requirements Congress prescribed."  *Johnson*, 632 F.3d at 928.  It applies only in situations where "delay would do real harm."  *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 214 (5th Cir. 1979).  If, for example, "a safety investigation shows that a new safety rule must be put in place immediately" or if a rule was of "life-saving importance to mine workers in the event of a mine explosion," then notice and comment is not required.  *Mack Trucks, Inc. v. E.P.A.*, 682 F.3d 87, 93 (D.C. Cir. 2012) (citing *Jifry v. F.A.A.*, 370 F.3d 1174, 1179 (D.C. Cir. 2004); *Util. Solid Waste Activities Grp. v. E.P.A.*, 236 F.3d 749, 755 (D.C. Cir. 2001); *Council of the S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 581 (D.C. Cir. 1981)).

Here, the Departments have identified no such harm.  Rather, they argue notice and comment was "impracticable" because they "only obtained the actual cost data necessary to calculate the annual fee after October 2022—leaving them with only a matter of weeks to update the guidance for 2023."  Docket No. 41 at 20.  But "an agency invoking the good cause exception must 'incorporate[] the finding and a brief statement of reasons therefor in the rules issued.'" *United States v. Garner*, 767 F.2d 104, 120 (5th Cir. 1985) (quoting 5 U.S.C. § 553(b)(B)); *Texas v. Becerra*, 577 F.

Supp. 3d 527, 548 (N.D. Tex. 2021) (declining to rely on post hoc argument to justify good cause).  And the Departments did not invoke this exception or provide any "reasons therefor" when it issued the Fee Guidance.

The Departments, moreover, had from October 2022 until January 2023 to undergo notice and comment—yet they fail to explain why that was insufficient.  *See U.S. Steel Corp.*, 595 F.2d at 213 (agency failed to show the "impracticability of affording notice and comment" where it could have accepted comments during the 60-day period Congress gave the agency to review and publish a list); *Louisiana v. Becerra*, 577 F. Supp. 3d 483, 500 (W.D. La. 2022) (agency defendants failed to show good cause where they "could have completed notice and comment TWICE" during a three-month period); *see also Nat. Res. Def. Council, Inc. v. Evans*, 316 F.3d 904, 912 (9th Cir. 2003) (agency failed to show good cause when it "did not demonstrate that some exigency apart from generic complexity of data collection and time constraints interfered with its ability to promulgate" rule).

The Departments repeatedly claim "it would be eminently 'impracticable'" to undergo annual notice-and-comment for the IDR administrative fee.  Docket No. 41 at 20.  But courts routinely hold that yearly notice and comment under similar circumstances is not only feasible but required by law.  *See, e.g.*, *Nat. Res. Def. Council, Inc.*, 316 F.3d at 912 (notice and comment of "fishery management plans" could be accomplished on an annual basis even given geographic complexities); *Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 14 F.3d 429, 441 (9th Cir. 1993) (same regarding annual calculation of "budget and assessment rates" for crops); *see also 12 Percent*

18

*Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 2019 WL 450676, at \*2 (D.D.C. Feb. 4, 2019) ("When the Board proposes changes to the *annual* rates, the Secretary must act within 90 days of receiving the Board's recommendations, a timeline that includes a period of notice and comment.").

Accordingly, the Court finds the Departments lacked good cause to bypass notice and comment.

### 3.

When an agency fails to provide notice and comment, courts must consider whether the error was harmless, a burden borne by the party asserting error. *Johnson*, 632 F.3d at 930; *City of Arlington v. FCC*, 668 F.3d 229, 243 (5th Cir. 2012), *aff'd*, 569 U.S. 290 (2013). "[T]he touchstone is 'whether it is clear that the lack of notice and comment did not prejudice the petitioner.'" *City of Arlington*, 668 F.3d at 244 (citing *Johnson*, 632 F.3d at 931).

Courts should "rare[ly]" find harmless error because the "vast majority of agency rulemaking, which produces nuanced and detailed regulations[,] greatly benefit[s] from expert and regulated entity participation." *Johnson*, 632 F.3d at 932. Even when the public is generally aware that an agency is considering an issue, "[t]he agency's rationale for the rule must be made clear and subjected to public comment." *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 382 (5th Cir. 2021) (remanding because agency failed to provide notice and comment regarding its changed justification for a rule).

Here, Plaintiffs argue that if the Departments had provided notice and comment, Plaintiffs could have submitted that a flat $350 fee is cost prohibitive for

many providers, or that there were "multiple alternative ways" to address eligibility disputes apart from the costly pre-eligibility review.  *See* Docket No. 44 at 8.  At oral argument, Plaintiffs suggested that a variable fee tied to the amount in controversy could have ameliorated the fee's cost-prohibitive nature, permitting more small-value claims to proceed to IDR.  Hearing Tr. 4/19/2023 13:21–14:2.  There is no indication that the Departments considered any of these alternatives.  This case is therefore unlike those in which a procedural error was deemed harmless because the agency "considered the [plaintiff's] arguments . . . and responded to those arguments during the . . . rulemaking." *Johnson*, 632 F.3d at 932; *see also City of Arlington*, 668 F.3d at 245 (holding failure to provide notice and comment was harmless because court was "not aware of a single argument the [plaintiffs] now present to this court that was not considered by the FCC in the agency proceedings below").

The Departments argue "there is no indication [their] conclusions would have been materially different" after notice and comment because the amount of the fee is statutorily required to offset estimated costs.  Docket No. 41 at 22.  The Court rejected a similar argument in *TMA I*, as have many courts before it. 587 F. Supp. 3d at 547 (collecting cases); *see also Paulsen v. Daniels*, 413 F.3d 999, 1006 (9th Cir. 2005) ("[A]n agency could always claim that it would have adopted the same rule even if it had complied with the APA's procedures.").  Further, in formulating the $350 fee—a 600% increase from the 2022 fee—the Departments elected to include for the first time costs of pre-eligibility review in their projected IDR costs.  Fee Guidance at 4; *cf. Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1488 (9th Cir. 1992) (finding harmless error

where agency had employed same APA-violative process "for decades").  Nothing in the Act requires that the total cost of "carrying out the IDR process," § 300gg-111(c)(8)(B), include the cost in determining whether a dispute is "eligible for the process" in the first place, Fee Guidance at 3.  The Departments' unilateral determination that it should be included constitutes the kind of internal deliberation that, if made without notice and comment, could "virtually repeal section 553's requirements." *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002).

The Departments also suggest that Plaintiffs forfeited their harm argument by failing to comment on the September Rule and the two previous guidance documents setting administrative fees. Docket No. 41 at 21.  But as noted above, the Departments included a new cost in setting the 2023 fee that was not discussed in prior rules or fee guidance documents. *California v. Azar*, 911 F.3d 558, 580 (9th Cir. 2018) ("multiple opportunities to comment" are "irrelevant" where the "prior rules were materially different").  And the significant fee increase presents a new set of problems not present in prior iterations.

The Court thus concludes it is not "clear that the lack of notice and comment did not prejudice [Plaintiffs]." *Johnson*, 632 F.3d at 931.

\*      \*      \*

The Departments' failure to provide notice and comment for the Fee Guidance violates the APA.  It is therefore "contrary to law" and must be "set aside." 5 U.S.C.

§ 706(2)(A); *see also Dialysis Patient Citizens v. Burwell*, 2017 WL 365271, at \*4–6 (E.D. Tex. Jan. 25, 2017).

## B.

The Court now turns to the September Rule on batching.  The Departments argue the batching rule is exempt from notice and comment because it is "a rule of agency procedure," or alternatively they had good cause to "forgo it here."  Docket No. 41 at 24–26.  Again, the Court disagrees on both grounds and finds that the error was not harmless.

## 1.

"[R]ules of agency organization, procedure, or practice" are exempt from the APA's notice-and-comment requirement.  § 553(b)(3)(A)).  This exception is "limited," intended only for "agency activities" and "internal house-keeping measures organizing agency activities."  *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Nat'l Lab. Rels. Bd. (AFL-CIO)*, 57 F.4th 1023, 1034 (D.C. Cir. 2023); *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 308 (5th Cir. 2021) (describing procedural rules as directing "internal agency organization").  In *American Hospital Ass'n v. Bowen*, for example, the court held that an agency rule was procedural where it required its own investigators to increase the number of hospital inspections.  834 F.2d 1037, 1051 (D.C. Cir. 1987).  The rule imposed "no new burdens" on the regulated public, but rather merely reallocated agency resources.  *Id.* at 1050–51; *see also AFL-CIO*, 57 F.4th at 1044 (rule was procedural where it specified when an agency would schedule adjudications).

As an initial matter, the Departments did not rely on this ground when it issued the September Rule, which may foreclose it from doing so now. *Union of Concerned Scientists v. Nuclear Regul. Comm'n*, 711 F.2d 370, 382 n.27 (D.C. Cir. 1983) (court was "foreclosed" from determining whether a rule was procedural because the agency relied only on the "good cause" exception in issuing the challenged rule (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).

In any event, the September Rule on batching is not one of agency procedure. The Rule governs providers and insurers and directs the manner in which they submit payment disputes to "independent arbitrations" adjudicated by third-party arbitrators. *TMA II*, 2023 WL 1781801, at *12; 45 C.F.R. § 149.510(a)(1) (setting forth requirements for the "independent dispute resolution (IDR) process"). The challenged portion of the Rule states that items and services may be "considered jointly as part of one payment determination" only if they satisfy certain criteria, including being "billed under the same service code, or a comparable code under a different procedural code system, such as Current Procedural Terminology (CPT) codes with modifiers, if applicable . . . ." § 149.510(c)(3). This is not an "internal house-keeping measure," but one that governs private parties "outside the context of an agency proceeding." *AFL-CIO*, 57 F.4th at 1036 (holding that rule was substantive where it facilitated party-to-party, not party-to-agency, information sharing).

The Fifth Circuit has held that the "substantial impact test" is the "primary means by which [it] look[s] beyond the label 'procedural' to determine whether a rule is of the type Congress thought appropriate for public participation." *Texas v. United*

23

*States*, 809 F.3d at 176 (quoting *U.S. Dep't of Lab. v. Kast Metals Corp.*, 744 F.2d 1145, 1153 (5th Cir. 1984)).   Under that test, a "nominally procedural" rule is considered substantive if it "modifies substantive rights and interests."   *Id.*   The September Rule on batching is substantive, not procedural, under this test.   By permitting batching only if items or services share the "same service code," the Rule severely limits what claims providers and insurers may batch.   One provider testified, for example, that "under the Departments' current batching rules, 100% of claims submitted to IDR for services I furnished were not allowed to be batched by the Departments."  Docket No. 18, Ex. 3 at 4.  And submitting separate claims to separate arbitrators (or IDRs) requires paying separate administrative fees—a costly and sometimes   cost-prohibitive   consequence   of   the   Rule.   § 300gg-111(c)(8)(A); § 149.510(d)(2)(i).

The Departments contend that the Rule is procedural because it does not concern "the substantive rights of the parties."  Docket No. 41 at 25.  But this ignores the Rule's impact described above.  For Plaintiff Houston Radiology Associated, even a $50 administrative fee makes it unviable to submit "30% of the radiology services that [its] radiologists furnish" to IDR under the current batching rule.  Docket No. 18, Ex. 1 at 3–4.[6]  The Rule's "same service code" requirement thus effectively forces

---

[6]   Houston Radiology provided an example.  For CPT code 74176—the code associated with abdominal and pelvic computerized tomography (CT) scans—the amount the provider typically seeks will be $242.29.  Docket No. 18, Ex. 1 at 4.  Insurers, however, typically offer to pay only the QPA, which is $90.66 for this CPT code.  *Id.*  The difference between these two amounts, $151.63, is the effective amount in controversy.  But because "88% of the claims for CPT code 74146 cannot be batched together" under the September Rule, disputes over this service must be brought individually—and the provider must pay the administrative fee for each IDR.  With a $350 administrative fee, it is "economically irrational" for providers to submit these claims, "as paying the fee itself far outweighs

providers out of IDR for some claims, substantially impacting the ability to recover their proposed payment amount. *AFL-CIO*, 57 F.4th at 1036 (holding rule was substantive where it altered "regulated parties' substantive rights and interests" by tilting union election rules in favor of employers); *id.* at 1041–42 (same where a rule intimidated employees and disincentivized them from voting); *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 141 F. Supp. 3d 681, 710 (S.D. Tex. 2015) (same where a rule "alter[ed] the outcomes for" applicants for federal emergency relief).

Because the September Rule on batching is not "procedural," the Departments were not exempted from the APA's notice-and-comment requirement on that basis.

**2.**

The Departments alternatively argue that notice and comment was "impracticable and contrary to the public interest." Docket No. 41 at 25–27. Congress, the Departments explain, gave them only "one year to promulgate rules relating to the IDR process," and "providers, facilities, plans, and issuers[] . . . need[ed] months of lead time to prepare for the new legal regime." *Id.* at 26.

The Court rejected this argument in a prior challenge to the September Rule. *TMA I*, 587 F. Supp. 3d at 545–46. As the Court explained, "the mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause for a § 553(b)(B) exception." *Id.* at 545 (quoting *U.S. Steel Corp.*,

---

any possible 'recovery' of $151.63 per claim." *Id.* Even with a $50 fee, it is economically unviable for Houston Radiology to bring 30% of the radiology services it performs to IDR under the September Rule on batching. *Id.* at 3.

595 F.2d at 213; *City of Waco v. EPA*, 620 F.2d 84, 86 (5th Cir. 1980)).  In fact, in *U.S. Steel*, an agency failed to show the "impracticability of affording notice and comment" where it could have accepted comments during the 60-day period Congress gave the agency to review and publish a list.  *U.S. Steel Corp.*, 595 F.2d at 213; *see also, e.g.*, *Johnson*, 632 F.3d at 929 ("Full notice-and-comment procedures could have been run in the [seven months] time taken to issue the interim rules.").  The Departments, moreover, failed to explain why they could not have provided notice and comment in the time they had—a full year.  *See TMA I*, 587 F. Supp. 3d at 545.

The Departments' desire, moreover, to provide regulated entities time to familiarize themselves with the September Rule did not excuse the lack of notice and comment.  *Id.* at 546 (quoting *Johnson*, 632 F.3d at 929 ("[The] desire to provide immediate guidance, without more, does not suffice for good cause.")).  Indeed, the Departments' claimed "goal of reducing uncertainty" was undercut by their "request for post-promulgation comments, which could have resulted in a [final] rule change." *Id.* (quoting *Johnson*, 632 F. 3d at 929); 86 Fed. Reg. at 55,994 (requesting comments).

The Departments fail to explain why this reasoning does not control here, and thus the Court finds that the Departments erred in bypassing notice and comment on this basis.

### 3.

The Court also finds that the error was not harmless.  If the Departments had provided notice and comment, Plaintiffs could have explained how the batching rule would impact them as providers.  On the record before the Court, the Departments cannot demonstrate that they considered and fully addressed these issues.  *Mock v.*

*Garland*, 2023 WL 4882763, at *18 & n.58 (5th Cir. Aug. 1, 2023) (finding plaintiffs "easily prove[d]" harm where they were not given an opportunity to voice their concerns and agency did not consider comments they would have made); *cf. City of Arlington*, 668 F.3d at 245 (failure to provide notice and comment was harmless because court was "not aware of a single argument the [plaintiffs] now present to this court that was not considered by the FCC in the agency proceedings below"); *Johnson*, 632 F.3d at 932 (failure to provide notice and comment was harmless in part because agency "nevertheless considered the arguments Johnson has asserted and responded to those arguments during the interim rulemaking").

The Departments argue there is no harm because they "considered Plaintiffs' arguments regarding the batching regulation, but ultimately disagreed with Plaintiffs." Docket No. 41 at 28. But the September Rule does not address the preclusive effect of requiring multiple IDR arbitrations for providers with small-value claims. The Departments say they considered that providers may "bundle" claims for IDR, a batching-like procedure in which different services may be brought to one IDR. Docket No. 41 at 28; 86 Fed. Reg. 55,994; *see also* 45 C.F.R. § 149.510(c)(3)(ii). But the bundling regulations "are subject to the rules for batched determinations . . . ." § 149.510(c)(3)(ii). This means that bundled items must still contain "the same service code." *Id.* § 149.510(c)(3)(i)(C). At oral argument, Plaintiffs clarified that the insurer must create a "service code that captures a bundled service[,]" which will not apply in most circumstances. Hearing Tr. 4/19/2023 at 20:3–12.

The Departments, moreover, failed to consider batching by a provider's sub-specialty or by service-code section—broader batching criteria that would give providers increased opportunity to bring their claims to arbitration. *Cf. City of Arlington*, 668 F.3d at 245 (failure to provide notice and comment was harmless because court was "not aware of a single argument the [plaintiffs] now present to this court that was not considered by the FCC in the agency proceedings below").

The Court thus concludes that lack of notice and comment here was not harmless.

\*    \*    \*

The Departments' failure to provide notice and comment for the batching portion of the September Rule likewise violated the APA. This portion of the Rule is thus "contrary to law" and must be "set aside."[7]

## IV.

The Court now considers the proper remedy.

## A.

Plaintiffs seek vacatur of the challenged rules—the Fee Guidance's $350 administrative fee and the batching provisions of the September Rule. Docket No. 1 at 48; Docket No. 18 at 30. The Departments argue that vacatur "would be highly

---

[7] Plaintiffs also argue that the challenged rules should be set aside as arbitrary and capricious. *See* Docket No. 18 at 22–29. Because the Court finds that the Departments improperly bypassed notice and comment and sets them aside on that basis, the Court need not address Plaintiffs' alternative argument. *See Flight Training Int'l, Inc. v. Fed. Aviation Admin.*, 58 F.4th 234 (5th Cir. 2023) ("In light of this disposition, we do not reach FTI's alternative argument that the Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."); *Marable v. Dep't of Com.*, 857 F. App'x 836, 837 (5th Cir. 2021) ("Because we conclude that the first basis relied upon by the district court for summary judgment . . . is dispositive, we need not address" other grounds.).

disruptive," and instead request the Court "remand the matter to the Departments without vacatur."  Docket No. 41 at 29.

The APA requires courts to "hold unlawful and set aside" rules that fail to satisfy the notice-and-comment requirement.  5 U.S.C. § 706(2)(D); *Texas v. Biden*, 20 F.4th 928, 942 (5th Cir. 2021) ("[The APA], among other things, requires courts to set aside agency actions. . . .") *abrogated on other grounds by Biden v. Texas*, 142 S. Ct. 2528, 2548 (2022).  And "the ordinary result" of setting aside unlawful rules is that "the rules are vacated."  *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 944–45 (N.D. Tex. 2019) (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)).[8]  Indeed, "vacatur of an agency action is the default rule in this Circuit."  *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc).

Courts consider two factors to determine whether vacatur is appropriate: "(1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur."  *Texas v. Biden*, 20 F.4th at 1000 (citing *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019)).  And "[b]ecause vacatur is the default remedy . . . defendants bear the burden to prove that vacatur is unnecessary."  *Am. Hosp. Ass'n v. Becerra*, 2023 WL 14337, at *5 (D.D.C. Jan 10, 2023).

---

[8]  Some jurists oppose this view.  *See, e.g.*, *United States v. Texas*, 143 S. Ct. 1964, 1981 (2023) (Gorsuch, J., joined by Thomas, J. and Barrett, J. concurring) (Section 706(2) of the APA "does not say anything about 'vacating' agency action ('wholesale' or otherwise). . . . Still, from those two words alone, the district court thought the power to nullify the Guidelines with respect to anyone anywhere surely follows . . . . Color me skeptical."); *Arizona v. Biden*, 40 F.4th 375, 395 (6th Cir. 2022) (Sutton, C.J., concurring) (explaining that § 706's "set aside" language does not support disregarding "the long-understood view of equity—that courts issue judgments that bind the parties in each case over whom they have personal jurisdiction").

Under the first factor, the Departments contend there is a "serious possibility that [they] will be able to substantiate [their] decision given an opportunity to do so." Docket No. 41 at 29.  But remand on this basis is proper only where the agency failed "adequately to explain why it chose one approach rather than another for one aspect of an otherwise permissible rule." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009); *Cent. & S.W. Servs., Inc. v. U.S. E.P.A.*, 220 F.3d 683, 692 (5th Cir. 2000) (remanding where EPA had solicited public comment but "failed to respond" to the comments or otherwise explain its reasoning in rulemaking).  In contrast, a total "[f]ailure to provide the required notice and to invite public comment[,]" which is the situation here, "is a fundamental flaw that normally requires vacatur of the rule." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020); *see also Daimler Trucks N. Am. LLC v. E.P.A.*, 737 F.3d 95, 103 (D.C. Cir. 2013) (noting that "the court typically vacates rules when an agency 'entirely fail[s]' to provide notice and comment"); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021) ("[A]n agency that bypassed required notice and comment rulemaking obviously could not ordinarily keep in place a regulation while it completed that fundamental procedural prerequisite.").

Under the second factor, the Departments assert—in conclusory fashion—that vacatur will lead to "chaos" because providers will batch disputes "for as many items and services as possible . . . ." Docket No. 41 at 29.  As one court held, however, this argument relies on nothing more than the "uncertainty that typically attends vacatur of any rule." *Nat. Res. Def. Council*, 955 F.3d at 85 (rejecting agency's disruption

argument).  And it ignores that both the Act and the September Rule limit batching in other ways unchallenged here.  42 U.S.C. § 300gg-111(c)(3)(A)(iii) (requiring that batched items are "related to the treatment of a similar condition"); 45 C.F.R. § 149.510(c)(3)(i)(A)–(B), (D) (requiring batched items or services be "billed by the same provider" within a 30-day period and will be paid for by "the same plan or issuer").  The Departments, moreover, recite no facts and submit no evidence of imminent disruption.  *Cf. Am. Hosp. Ass'n v. Becerra*, 2023 WL 143337, at *4–5 (D.D.C. Jan. 10, 2023) (finding agency met its burden to justify departure from the "default remedy" of "vacatur" where it showed, with specific facts and evidence, the "staggering value and number of transactions at issue").

The proper remedy here is thus vacatur.  *See, e.g.*, *Coal. for Workforce Innovation v. Walsh*, 2022 WL 1073346, at *19 (E.D. Tex. Mar. 14, 2022) (vacating rule where agency bypassed notice and comment); *see also Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022) ("The default rule is that vacatur is the appropriate remedy.").

## B.

Plaintiffs also request "equitable disgorgement of the administrative fees paid pursuant to the Fee Guidance."  Docket No. 1 at 48; Docket No. 18 at 30.

The APA waives sovereign immunity only for "relief other than monetary damages."  5 U.S.C. § 702.  Courts thus lack jurisdiction under the APA to award money "to the plaintiff to substitute for a suffered loss."  *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (citing § 702).  Section 702, however, does permit "specific relief."  *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (1999).  Specific relief may in

some instances include the return of money.  *Bowen*, 487 U.S. at 893 ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'").

The Supreme Court and the Fifth Circuit have recognized at least two forms of specific relief included within § 702's waiver that involve the return of money. First, § 702 waives immunity for "a suit seeking to enforce [a] statutory mandate . . . which happens to be one for the payment of money."  *Id.* at 900; *see also Anderson v. Jackson*, 556 F.3d 351, 359 (5th Cir. 2009) ("Suits seeking money may go forward under § 702 where the statute in question specifically mandates the payment of money.").  Second, § 702 waives immunity for the return of confiscated physical property, including currency.  *See, e.g.*, *Armendariz-Mata v. U.S. Dep't of Just., Drug Enf't Admin.*, 82 F.3d 679, 682 (5th Cir. 1996) (finding jurisdiction under § 702 to grant an "equitable claim for the return of $8,819 in currency" confiscated by the Drug Enforcement Administration).

Plaintiffs' requested remedy—a "refund" of the administrative fees paid pursuant to the Fee Guidance—does not fall within either of these two forms.  Docket No. 18, Ex. 4 at 1 (Plaintiffs' proposed order).  Plaintiffs identify no statutory mandate entitling them to a refund.  *Texas v. United States*, which Plaintiffs cite, is inapposite because the governing statute in that case explicitly exempted the plaintiff states from payment, entitling them to disgorgement.  336 F. Supp. 3d 664, 674 (N.D. Tex. 2018).  And Plaintiffs have offered no support for characterizing their refund request as the return of "confiscated property."  *Armendariz-Mata*, 82 F.3d at 682.

Accordingly, the Court lacks jurisdiction to order the repayment of the Plaintiffs' paid fees.  *E.g.*, *Bowen*, 487 U.S. at 910–11.

## C.

Finally, Plaintiffs seek an extension of IDR deadlines to permit "providers who forwent submitting claims to IDR because of the challenged actions" to file their claims.  Docket No. 18 at 30; *see also* Docket No. 1 at 49 (requesting "[a]ny other just and proper relief").

"Judicial extension of [an agency's] deadline is an extraordinary remedy not to be imposed as a matter of course."  *Nat. Res. Def. Council, Inc. v. E.P.A.*, 22 F.3d 1125, 1135 (D.C. Cir. 1994).  Courts should award this extraordinary remedy only "if equity so requires."  *Connecticut v. Schweiker*, 684 F.2d 979, 997 (D.C. Cir. 1982).  The Court is not persuaded that such an extraordinary remedy is warranted here.  Indeed, the court in Plaintiffs' cited case ordered a similar remedy only after the agency defendants failed to comply with a previously entered preliminary injunction.  *Gomez v. Trump*, 490 F. Supp. 3d 276, 282, 295 (D.D.C. 2020).  Plaintiffs, moreover, offer no meaningful criteria by which the Departments can distinguish between providers who "forwent" IDR because of the actions challenged here and those who may want only "a second bite at the apple."  Hearing Tr. 4/19/2023 at 45:7–10.  "As a court of equity, the court cannot place Plaintiffs in a *better* position than they would have been in but for the [agency's] legal mistakes."  *Gomez*, 490 F. Supp. 3d at 289.

Accordingly, the Court declines to order a deadline extension.

## V.

In sum, the Court holds that the Departments improperly bypassed the APA's notice-and-comment requirement in issuing the Fee Guidance and the September Rule's batching regulations.  The Court finds that vacatur of these rules is the proper remedy.  Plaintiffs have failed to show, however, that either a refund of fees paid pursuant to the Fee Guidance or a deadline extension is warranted here.

In their proposed order, Plaintiffs also seek vacatur of three provisions of the September Rule that permit the Departments to issue fee guidance annually.  Docket No. 18, Ex. 4 at 1 (seeking vacatur of 45 C.F.R. § 149.510(d)(2)(ii), 26 C.F.R. § 54.9816-8T(d)(2)(ii), and 29 C.F.R. § 2590.716-8(d)(2)(ii)).  Plaintiffs, however, provide no justification for holding these provisions unlawful under the APA, and thus vacatur is improper.

Accordingly, the Court **GRANTS-in-part** Plaintiffs' motion for summary judgment (Docket No. 18) as it relates to the Fee Guidance and the September Rule's batching requirements, **DENIES** Plaintiffs' motion for summary judgment (Docket No. 18) as it relates to the September Rule's provision permitting annual fee guidance, **DENIES** the Departments' cross-motion for summary judgment (Docket No. 41), and **ORDERS** that the following rules and provisions are **VACATED** and **REMANDED** for further consideration in light of this Opinion:

(1)  The Fee Guidance's $350 administrative fee;

(2)  45 C.F.R. § 149.510(c)(3)(i)(C);

(3)  26 C.F.R. § 54.9816-8T(c)(3)(i)(C); and

(4)  29 C.F.R. § 2590.716-8(c)(3)(i)(C).

So **ORDERED** and **SIGNED** this **3rd**   day of **August, 2023.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE